UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
Jon Q. Wright,

                                Plaintiff,

             -against-

R B Miah, an individual, Does 1-10,

                             Defendant.
-----------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

No. 22-CV-4132-CBA-JRC

JAMES R. CHO, United States Magistrate Judge:

      Plaintiff Jon Q. Wright ("Wright" or "plaintiff") commenced this action against

defendant R B Miah ("Miah" or "defendant") and ten unidentified individuals,[1] pursuant to the

Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101 *et seq.*, and the Digital

Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 1201 *et seq.  See generally* Complaint

("Compl."), Dkt. 1.  Plaintiff seeks statutory damages for willful copyright infringement under

the Copyright Act and willful DMCA violations, and attorney's fees and costs.  *See*

Memorandum of Law in Support ("Pl. Mem."), Dkt. 25-1 at ECF page 23.[2]

      Upon plaintiff's application and in light of defendant's failure to appear in or otherwise

defend this action, the Clerk of the Court entered defendant's default on September 6, 2022.  *See*

---

[1] In his motion for default judgment, plaintiff does not pursue his claims against "Does 1-10,"
who have not been identified or served.  Those claims should be deemed abandoned.  *See, e.g.*,
*Taylor v. New York City Fresh Market*, No. 19-CV-4797, 2020 WL 10356230, at *1 n.1
(E.D.N.Y. Dec. 23, 2020) (recommending dismissal of complaint against John Doe defendant),
*report and recommendation adopted*, 2021 WL 2940832 (E.D.N.Y. July 13, 2021); *Payamps v.
M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *1 n.1
(E.D.N.Y. Dec. 9, 2019) (same).

[2] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF")
system.

Clerk's Entry of Default, Dkt. 24.  Currently pending before this Court, on a referral from the Honorable Carol Bagley Amon, is plaintiff's motion for default judgment against defendant R B Miah.  *See* Order Referring Motion entered October 4, 2022.  For the reasons described below, this Court respectfully recommends granting plaintiff's motion for default judgment.

## Background

The following facts are drawn from plaintiff's Complaint and are accepted as true for purposes of this motion.  Defendant Miah, a resident of the United Kingdom, operates an online merchandise shop through the website platform www.Etsy.com ("Etsy") under the account name "RiskirStreet."  *See generally* Compl. ¶¶ 5, 16-17.  Based on information and belief, defendant resides at 231 Turners Road North, Luton LU2 9AH in the United Kingdom.  *See id*. ¶ 5.

Plaintiff, a wildlife illustrator, authored nine drawings (the "Subject Works") that feature freshwater fish, all of which have been registered with the U.S. Copyright Office prior to the initiation of this litigation.  *Id.* ¶¶ 11-13.[3]  On June 29, 2022, plaintiff submitted DMCA takedown notices to Etsy regarding allegedly infringing material posted by defendant.  *Id.* ¶¶ 14-17.  Defendant offered for sale digital files and drinking tumblers that featured artwork that unlawfully incorporated the Subject Works ("Infringing Artwork") and affixed defendant's own copyright management information ("CMI") to the Infringing Artwork.  *Id.* ¶ 15; Pl. Mem. at ECF page 7.  Defendant asserted copyright ownership over the artwork, including the Subject Works.  *See* Compl. ¶ 25; Pl. Mem. at ECF page 7.

Plaintiff's DMCA takedown notices demanded the removal of numerous listings on Etsy that unlawfully displayed and offered for sale the digital files that featured the Subject Works.

---

[3] The Complaint mistakenly included a tenth copyrighted illustration.  *See* Declaration of Jon Q. Wright ("Wright Decl.") ¶ 6, Dkt. 25-2.

Compl. ¶ 15.  On June 30, 2022, defendant submitted DMCA counter-notices to Etsy claiming that the infringing material plaintiff identified in the takedown notices had been removed either by mistake or because of misidentification of the material.  *Id.* ¶ 18.  Defendant then superimposed his own watermarks, logos, or business name over the Subject Works and offered drinking tumblers and the corresponding digital art files for sale.  *Id*. ¶¶ 24-25.

On July 14, 2022, plaintiff commenced this action.  *See generally* Compl.  Plaintiff alleged four causes of action:  copyright infringement pursuant to the Copyright Act, 17 U.S.C. §101 *et seq*. (First Claim for Relief); misrepresentation of copyright claims under the DMCA, 17 U.S.C. § 512 *et seq*. (Second Claim for Relief); vicarious and/or contributory copyright infringement under the Copyright Act (Third Claim for Relief); and providing false copyright management information in violation of 17 U.S.C. § 1202(a) (Fourth Claim for Relief).  *See* Compl. ¶¶ 27-58.  Plaintiff seeks default judgment only on his claim for copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101, and claim under the DMCA, 17 U.S.C. § 1202(b).  *See* Pl. Mem. at ECF pages 6, 18-19.[4]

After being served with the Summons and the Complaint on August 1, 2022, Dkt. 16, defendant failed to appear, answer, or otherwise respond to the Complaint.[5]  On September 6, 2022, the Clerk of Court entered default against defendant.  *See* Clerk's Entry of Default, Dkt. 24.  On October 3, 2022, plaintiff filed the instant motion for default judgment.  *See* Dkt. 25.

---

[4] Plaintiff has waived his Second Claim for Relief (misrepresentation of copyright claims under the DMCA) and Third Claim for Relief (vicarious and/or contributory copyright infringement). *See* Pl. Mem. at ECF pages 18-19.

[5] On August 12, 2022, the Court issued a preliminary injunction, prohibiting defendant from displaying and offering for sale plaintiff's Subject Works, and further prohibiting distribution of any digital files containing the works at issue.  *See* Preliminary Injunction, Dkt. 18.

**Discussion**

I.   **Default Judgment**

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a

default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  First,

the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on

the Clerk's record of the case.  Fed R. Civ. P. 55(a) (providing that "[w]hen a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise, the clerk must enter the party's default").  This first

step is nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).

Second, after the Clerk of the Court enters a defendant's default, the court may enter a default

judgment.  *See* Fed R. Civ. P. 55(b).

Here, on September 6, 2022, the Clerk of the Court entered default against defendant

after failing to respond to the Complaint or otherwise appear in this action.  *See* Dkt. 24.  To

date, defendant has not appeared or moved to vacate the entry of default.

Whether or not a default judgment is issued is up to the discretion of the court.  When

evaluating a plaintiff's application for a default judgment, "a court is required to accept all []

factual allegations as true and draw all reasonable inferences in [plaintiff's] favor."  *Finkel v.

Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider

whether the unchallenged facts constitute a legitimate cause of action, since a party in default

does not admit conclusions of law."  *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270

(E.D.N.Y. 2010) (internal quotations and citations omitted); *see TAGC Mgmt., LLC v. Lehman,

Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a

district court is required to determine whether the plaintiff's allegations establish the defendant's

4

liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments are generally disfavored and are reserved for rare occasions." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil Corp.*, 10 F.3d at 96) (internal quotation marks omitted). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that a district court must balance that interest with its responsibility to "afford litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id.* Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

Once the Clerk enters a certificate of default, a defendant is deemed to have admitted the well-pled allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citations omitted). A fact is not considered well-pled, however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citations and internal quotation marks omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)

(quoting *Enron Oil Corp.*, 10 F.3d at 95); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-CV-2660, 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019) (citing *Enron Oil Corp.*, 10 F.3d at 96; *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)). "These factors are 1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Double Green Produce*, 2019 WL 1387538, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (internal quotation marks omitted).

As to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411, 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (collecting cases). Here, the defaulting defendant has not responded to the Complaint or the motion for default judgment despite proper service. *See* Dkts. 16, 27, 28, 31, 33. Accordingly, the defaulting defendant's failure to respond to the Complaint or the instant motion demonstrates that defendant's default is willful.

As to the second factor, the defaulting defendant's failure to appear in this action has left the Court unable to assess whether defendant has a meritorious defense. This weighs in favor of granting a default judgment. *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a

determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").

With respect to the third factor, because the defaulting defendant has demonstrated a refusal to engage in this action, "there are no additional steps available to secure relief [against defendants] in this Court." *Trs. of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)), *report and recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021). The Court thus finds that the prejudice factor weighs in favor of default judgment.

Accordingly, the Court recommends finding that the defaulting defendant's failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein. The Court now assesses the propriety of a default judgment with respect to plaintiff's claims of copyright infringement under the Copyright Act and willful DMCA violations.

## II.    Service of Process

Pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure, an individual in a foreign country may be served with process "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). "Article 10 of the Hague Convention authorizes service of process through alternative means such as 'postal channels,' if the signatory country does not object to that means of service." *Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 342 (E.D.N.Y. 2021) (quoting the Hague Convention, art.

10(a)).  The United Kingdom, "a signatory to the Hague Convention[6] does not object to Article 10(a), and the Second Circuit has construed this to mean that service of process by international mail is valid."  *SEC v. Glob. Inv. Strategy UK Ltd.*, No. 20-CV-10838, 2021 WL 4896127, at *2 (S.D.N.Y. Oct. 19, 2021) (citations omitted).

Courts also have discretion to authorize alternative methods of service of process under Rule 4(f)(3).  *See Group One Ltd.*, 523 F. Supp. 3d at 342 (citing *Merrimack Mut. Ins. Co. v. New Widetech Indus. Co.*, No. 20-CV-546, 2020 WL 5879405, at *1 (D. Conn. Oct. 2, 2020)) ("The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."); *Cunningham v. Gen. Motors LLC*, No. 20-CV-3097, 2020 WL 4748157, at *1 (S.D.N.Y. Aug. 17, 2020) ("Under Federal Rule of Civil Procedure 4(f)(3), a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process.").  On July 29, 2022 (Dkt. 13 at ECF page 3) and August 12, 2022 (Dkt. 18 at ECF page 2), the Court ruled that sufficient cause was shown for service to be made upon defendant by email, if completed by delivery of PDF copies to defendant's three known and listed emails.

Here, the Court finds proper service of process on defendant.  Plaintiff alleges that defendant is a resident of the United Kingdom.  *See* Compl. ¶ 5.  On August 1, 2022, plaintiff effectuated service of the Summons and Complaint on defendant's three known email addresses.

---

[6] *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, HCCH Members (Sept. 7, 2023), https://www.hcch.net/en/states/hcch-members (listing the United Kingdom as a party to the Hague Service Convention).

*See* Summons Returned Executed, Dkt. 16.[7]  Thus, defendant was properly served with process via his three email addresses known to plaintiff.  *See Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. Aug. 28, 2021) ("[S]ervice by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant."); *Cunningham*, 2020 WL 4748157, at *1 ("[S]ervice by email is not prohibited by [the Hague Convention].").

## III.   Liability

Plaintiff moves for default judgment on his Copyright Act and DMCA claims.  For the following reasons, this Court concludes that plaintiff's factual allegations give rise to liability under the relevant statutes.

### A.   Copyright Act

Plaintiff's allegations set forth in the Complaint state a valid claim for copyright infringement.  Section 106 of the Copyright Act vests in a copyright owner, in relevant part, "the exclusive rights to do and to authorize any of the following:  (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership . . . ."  17 U.S.C. § 106; *see Premium Sports Inc., v. Mendes*, No. 17-CV-1309, 2018 WL 2078488, at *4 (E.D.N.Y. Mar. 1, 2018), *report and recommendation adopted*, Order (E.D.N.Y Mar. 16, 2018).  Pursuant to the Act, "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . is an infringer of the copyright or right of the author."  17 U.S.C. § 501.  To establish copyright infringement, plaintiff must establish:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of

---

[7] On October 4, 2022, plaintiff's counsel served the motion for default judgment on defendant by U.S.P.S. Priority Mail International.  Dkt. 27 (Certificate of Service).  Delivery of the motion was confirmed on October 18, 2022.  Dkt. 28 (Supplemental Declaration).

the work that are original." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. National Enter.*, 471 U.S. 539, 548 (1985)).

As to the question of copyright validity, "[i]n many cases, the existence of a valid copyright can be established by the introduction into evidence of a Copyright Office certificate of registration." *Sheldon v. Plot Com.*, No. 15-CV-5885, 2016 WL 5107072, at *11 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016). Such a certificate, if timely obtained, "constitute(s) prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980) (citing 17 U.S.C. § 410(c)); *Joe Hand Promotions, Inc. v. Rosero*, No. 19-CV-792, 2020 WL 2572328, at *4 (E.D.N.Y. Feb. 18, 2020), *report and recommendation adopted*, Order (E.D.N.Y. Mar. 5, 2020). However, "[w]here other evidence in the record casts doubt on the question, validity will not be assumed." *Durham Indus.*, 630 F.2d at 908. Plaintiff's presentation of a certificate of registration merely "shifts the burden of proof to Defendants to show the invalidity of Plaintiff's copyrights." *Prince Grp., Inc. v. MTS Prods.*, 967 F. Supp. 121, 124 (S.D.N.Y. 1997).

Here, with respect to the first element of infringement, plaintiff has provided nine valid certificates of registration (Dkt. 25-3), issued by the United States Copyright Office,[8] that constitute *prima facie* evidence of the validity of the copyrights, and the facts set forth in the certificates. *See Rosero,* 2020 WL 2572328, at *4; *Wright v. Edwards*, No. 21-CV-6063, 2022

---

[8] Valid copyright registration numbers held by plaintiff and at issue in this case, include the following: VA 1-957-011; VAu 348-936; VA 2-160-537; VA 1-153-915; VAu 1-021-822; VA 519-738; VA 500-654; VA 2-087-516; and VA 2-083-993. *See* Wright Decl. Ex. A, Copyright Registrations, Dkt. 25-3. In his affidavit, plaintiff listed the incorrect registration number for his work entitled, "Smallmouth Bass and Topwater Bait." *See* Wright Decl. ¶ 5. The correct registration number is VA 2-160-537. *See* Dkt. 25-3 at ECF page 6.

WL 17820247, at *7 (E.D.N.Y. July 18, 2022) (citing *Premium Sports Inc*, 2018 WL 2078488, at *5) ("[W]hen there exists prima facie validity of [p]laintiff's copyright, the burden of proof shifts to the [d]efendant to show [p]laintiff's work is not original.").  Due to defendant's failure to appear or respond to the allegations herein, there has been no showing to contradict the validity of plaintiff's copyrights.

With respect to the second required element, having defaulted in this case, defendant has also failed to show that plaintiff's work is unoriginal.  *See Rosero*, 2020 WL 2572328, at *4. Plaintiff provided comparisons of the Subject Works with the Infringing Works, demonstrating that the Infringing Works are virtually identical.  *See, e.g.,* Wright Decl. ¶¶ 17, 20, 26 & Ex. D-3, Dkt. 25-6.  As such, considering the allegations set forth in the Complaint and defendant's default, this Court finds that plaintiff has established defendant's liability on plaintiff's claim of copyright infringement.

### B.    DMCA

Congress enacted the DMCA to "strengthen copyright protection in the digital age." *Universal City Studios, Inc. v. Corley,* 273 F.3d 429, 435 (2d Cir. 2001).  To strengthen those copyright protections, the DMCA "prohibits both the removal or alteration of copyright management information ('CMI'), as well as the distribution of false CMI."  *See Business Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007, 2023 WL 1809707, at *6 (S.D.N.Y. Feb. 8, 2023), *report and recommendation adopted*, 2023 WL 4267590 (S.D.N.Y. June 28, 2023).  As defined in the DMCA, "CMI includes the name of, and other identifying information about, the author or copyright owner of a work, 'the information set forth on a notice of copyright,' the '[t]erms and conditions for use of the work,' and 'links to such information.'"  *Id.* (citing 17 U.S.C. §§ 1202(c)(1), (2), (3), (6), (7)); *BanxCorp v. Costco Wholesale Corp.,* 723 F. Supp. 2d

596, 609 (S.D.N.Y. 2010) (citing 17 U.S.C. § 1202(c)(1)-(3), (6)-(7)) (DMCA defines CMI as

the "title or identifying information of the work, author or copyright owner, the terms and

conditions of use of the work, and identifying numbers or symbols referring to such

information.").

Plaintiffs may prove the existence of CMI in connection with their artwork by showing

that their name is included in the illustrations. *See Myeress v. Elite Travel Grp. USA*, No. 18-

CV-340, 2018 WL 5961424, at *2 (S.D.N.Y. Nov. 14, 2018) (ruling that the watermarked name

of a copyright owner constitutes CMI and the removal of such CMI by the defendant gives rise

to a prima facie case for a section 1202(b) violation); *Agence France Presse v. Morel*, 769 F.

Supp. 2d 295, 305-06 (S.D.N.Y. 2011) (holding that the notation of a photographer's last name

next to a photograph constitutes CMI).  The name must be used as a reference to the owner of a

copyrighted text to constitute "managing" copyright information with respect to the work at

issue. *See Fischer v. Forrest,* 968 F.3d 216, 224 (2d Cir. 2020).  In this case, as discussed below,

plaintiff alleges violations of both sections 1202(a) (as set forth in the Complaint) and 1202(b)

(as set forth in plaintiff's motion for default judgment) of the DMCA.[9]

"Under section 1202(a) of the DMCA, no person may provide or distribute false CMI,

knowingly and with intent to induce, enable[,] facilitate, or conceal copyright infringement."

---

[9] In his Complaint, plaintiff alleges that defendant "provided false copyright management information ('CMI') in violation of 17 U.S.C. § 1202(a)."  Compl. ¶ 54.  Plaintiff does not specifically reference 17 U.S.C. § 1202(b) in the Complaint, but alleges defendant "removed copyright information from the Subject Works, namely [p]laintiff's signature, the year in which the artwork was created, and/or the copyright symbol '©,'" presumably in violation of section 1202(b).  *Id.* ¶ 51.  In contrast, in his memorandum of law, plaintiff makes no reference to section 1202(a), but instead argues that defendant violated "all subparts of § 1202(b)."  *See* Pl. Mem. at ECF page 19.

*Business Casual Holdings*, 2023 WL 1809707, at *7 (citing 17 U.S.C. § 1202(a)).[10] "To establish a violation of this statute, a plaintiff must prove that the defendant:  (1) provided or distributed CMI; (2) knew that the CMI was false; and (3) acted with the intent to cause or conceal copyright infringement."  *See Business Casual Holdings*, 2023 WL 1809707, at *7 (citing *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018)) (under section 1202(a), defendant must have "knowingly provided false copyright information and that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement").

Under section 1202(b) of the DMCA, "absent the authority of the copyright owner, a defendant may not (1) intentionally remove or alter any CMI, (2) distribute CMI knowing that the CMI has been removed or altered, or (3) distribute copies of works knowing that CMI has been removed or altered, and knowing, or, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal copyright infringement."[11]  *See Business Casual Holdings*,

---

[10] Specifically, section 1202(a) (false copyright management information) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement -- (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false."  17 U.S.C. § 1202(a).

[11] Section 1202(b) (removal or alteration of copyright management information) provides:

> No person shall, without the authority of the copyright owner or the law --
> (1) intentionally remove or alter any copyright management information,
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
> (3) distribute, import for distribution, or publicly perform works, copies of works
> . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).

2023 WL 1809707, at *7 (citing 17 U.S.C. 1202(b)).  Section 1202(b) essentially prohibits three

types of acts, as summarized in *Mango v. BuzzFeed, Inc*., 356 F. Supp. 3d 368 (S.D.N.Y. 2019),

*aff'd*, 970 F.3d 167 (2d Cir. 2020):

> The first is the removal or alteration of [copyright management information ("CMI")] (the "Removal/Alteration Prohibition").  The second is the distribution of CMI with missing or altered information.  The third is the distribution of works with missing or altered CMI (the "Distribution Prohibition").

*Mango*, 356 F. Supp. 3d at 377.

To establish a violation under section 1202(b)(1) (DMCA's Removal Prohibition), a

plaintiff must show "(1) the existence of CMI on the [infringed work]; (2) removal and/or

alteration of that information; and (3) that the removal and/or alteration was done intentionally."

*Business Casual Holdings*, 2023 WL 1809707, at *7 (quoting *BanxCorp*, 723 F. Supp. 2d at 609

(collecting cases)); *see Aaberg v. Francesca's Collections, Inc.*, No. 17-CV-115, 2018 WL

1583037, at *6 (S.D.N.Y. Mar. 27, 2018).

To establish a violation of section 1202(b)(3), "a plaintiff must prove:  (1) the existence

of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] . . . works

[or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without

authority of the copyright owner or the law'; and (4) while 'knowing or . . . having reasonable

grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an

infringement.'"  *Zuma Press, Inc. v. Getty Images (US), Inc*., 845 F. App'x 54, 57-58 (2d Cir.

2021) (quoting *Mango v. BuzzFeed, Inc*., 970 F.3d 167, 171 (2d Cir. 2020)).  Section 1202(b)(3)

contains a "double-scienter" requirement.  *See Mango*, 970 F.3d at 171.  A defendant distributing

"improperly attributed copyrighted material must have actual knowledge that CMI 'has been

removed or altered without authority of the copyright owner or the law,' as well as actual or

constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Id*. (citing 17 U.S.C. § 1202(b)(3)).

Section 1202(b) does not define "distribution," but courts have interpreted the term as pertaining to a sale or transfer of ownership extending beyond that of a mere public display. *See FurnitureDealer.Net, Inc v. Amazon.com, Inc*, No. 18-CV-232, 2022 WL 891473, at *23-*24 (D. Minn. Mar. 25, 2022) (finding that the "[d]efendant's actions—the display of FDN Descriptions on Amazon product detail pages—do not constitute distribution").

In his Complaint, plaintiff alleges that defendant "provided false copyright management information ('CMI') in violation of 17 U.S.C. § 1202(a)." Compl. ¶ 54.   Plaintiff does not specifically reference 17 U.S.C. § 1202(b) in the Complaint, but further alleges that defendant "removed copyright information from the Subject Works." *Id.* ¶ 51.   In contrast, in his memorandum of law, plaintiff makes no reference to section 1202(a), but instead argues that defendant violated "all subparts of § 1202(b)." *See* Pl. Mem. at ECF page 19.   However, the "removal of CMI in violation of 17 U.S.C. § 1202(b) and replacing it with false CMI in violation of 17 U.S.C. § 1202(a) are distinctly separate violations, each of which may merit statutory damages." *Business Casual Holdings*, 2023 WL 1809707, at *11.   Nevertheless, plaintiff's failure to cite a subsection of the statute, "or to cite the correct one, in no way affects the merits of a claim.  Factual allegations alone are what matters." *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 45-46 (2d Cir. 1997) (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988)).   Thus, the Court considers plaintiff's factual allegations concerning the removal of CMI and use of false CMI despite plaintiff's failure to reference the correct subsections of 1202.

In addition, plaintiff's argument, in his memorandum of law, that defendant violated "all subparts of § 1202(b)" is overbroad. *See* Pl. Mem. at ECF page 19.   Here, the Court finds that

the conduct alleged does not constitute separate violations of section 1202(b)(2) and 1202(b)(3). Section 1202(b)(2) refers to the "distribut[ion] or import for distribution [of] copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b)(2). As discussed above, section 1202(b)(2) prohibits the distribution of CMI with missing or altered information, while section 1202(b)(3) governs the distribution of works with missing or altered CMI. *See Mango*, 356 F. Supp. 3d at 377. Here, plaintiff does not allege that defendant distributed removed or altered CMI separate and apart from the distribution of the copyrighted Subject Works. As the elements of the two statutory provisions are otherwise indistinguishable, plaintiff has not plausibly stated a claim under section 1202(b)(2) that is sufficiently distinct from his claim under section 1202(b)(3). *See Stevens v. Corelogic, Inc*., 899 F.3d 666, 673 n.3 (9th Cir. 2018); *Reilly v. Plot Com*., No. 15-CV-5118, 2016 WL 6837895, at *10 (S.D.N.Y. Oct. 31, 2016) (noting that distribution of altered photograph violates either 1202(b)(2) or (b)(3)); *see also infra*, § IV(B). For this reason, and given the overlap in elements, this Court discusses only the section 1202(b)(3) claim instead of the potential 1202(b)(2) claim.

As discussed below, this Court finds that plaintiff has established violations of sections 1202(a), 1202(b)(1), and 1202(b)(3). Plaintiff has established the existence of CMI in connection with the artwork by showing that each of the Subject Works contains plaintiff's signature, the year the work was created, or a copyright notice. *See* Wright Decl. ¶¶ 16, 19, 25, 34 & Wright Decl. Ex. A, Copyright Registrations, Dkt. 25-3. Plaintiff also provided proof of registration with the U.S. Copyright Office for all nine of the at-issue illustrations. *See* Wright Decl. Ex. A, Copyright Registrations, Dkt. 25-3. Further, plaintiff's unopposed allegations are sufficient to show that defendant violated section 1202 of the DMCA by intentionally removing

accurate CMI, adding false CMI and distributing plaintiff's works knowing that proper authority had not been granted, and that the distribution of works with removed CMI would conceal infringement.

### 1.    Removal in violation of section 1202(b)(1)

Plaintiff alleges that defendant's digital scrubbing of the original handwritten copyright notice from the illustrations constitutes "removal" under section 1202(b).  *See* Pl. Mem. at ECF page 19.  The Court agrees.  Defendant violated section 1202(b)(1) by removing plaintiff's signature, the year the work was created, and/or a copyright notice from six of the Subject Works.  *See* Pl. Mem. at ECF page 20; *Phillips v. TraxNYC Corp.*, No. 21-CV-528, 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023) (finding defendant liable under the DMCA for cropping a photograph to exclude plaintiff's CMI and posting the altered version on defendant's website), *report and recommendation adopted*, 2023 WL 2532066 (E.D.N.Y. Mar. 14, 2023).

As required, the Court also finds it plausible that defendant knew or had reason to know that the removal of plaintiff's CMI would induce the infringement of a right protected under this section of the statute, given defendant's counternotices to Etsy.  *See* Declaration of Dmitry Lapin, Esq. ("Lapin Decl.") ¶ 17, Dkt. 25-8; emails attached to Compl., Dkt. 1-4.  Thus, the Court finds that defendant violated section 1202(b)(1).

### 2.    False copyright management information in violation of section 1202(a)

Plaintiff alleges that defendant committed 18 acts of "alteration" by affixing defendant's logos onto the artwork itself and ascribing defendant's "terms and conditions" to each tumbler listing in violation of section 1202(b).  Wright Decl. ¶¶ 35-36, Dkt. 25-2; Pl. Mem., Dkt. 25-1 at ECF page 22.  While other conduct by defendant may constitute an "alteration" of CMI in violation of section 1202(b), the Court finds that defendant's affixing his logos onto the artwork

itself, and ascribing defendant's "terms and conditions" to each tumbler listing on the Etsy website, more appropriately constitutes a violation of section 1202(a), instead of 1202(b). Section 1202(a) prohibits the *addition* of copyright information that falsely presents the copyright.  Accordingly, the Court construes plaintiff's allegation that defendant "[p]rovided false CMI" as asserting a violation of section 1202(a).  *See Smith v. L. Off. of Richard St. Paul, Esq., PLLC*, No. 22-CV-5648, 2023 WL 3570606, at *6 (S.D.N.Y. May 18, 2023) (finding plaintiff sufficiently stated a claim for distribution of copyrighted work with improperly removed CMI under section 1202(b), but not section 1202(a) because the complaint "lack[ed] factual allegations indicating defendant provided false CMI, such as by adding its own copyright notice or a credit identifying the wrong individual as the photographer"); *Sheldon*, 2016 WL 5107072, at *15 (holding that "since it is entirely possible for an infringing defendant to remove valid copyright information [in violation of 1202(b)] without adding false copyright information [in violation of 1202(a)] and [vice versa], it is reasonable to conclude that Congress intended these two subsections to be construed as prohibiting different conduct").

Because plaintiff identified 18 Etsy listings containing plaintiff's artwork with defendant's false CMI, there is sufficient evidence to find defendant liable under section 1202(a). *See* Dkt. 4-4 (screenshots of infringing listings); Wright Decl. ¶¶ 35-36; *see, e.g.*, Lapin Decl. Ex. E (exemplar screenshots), Dkt. 25-13; *see also Smith*, 2023 WL 3570606, at *6.  The Court finds that defendant knowingly violated section 1202(a) by affixing false CMI and ascribing defendant's false "terms and conditions" to each tumbler listing with the intent to conceal infringement.

### 3.    Distribution in violation of 1202(b)(3)

Plaintiff's allegations are sufficient to establish defendant's liability under the

Distribution Prohibition of copies of work with removed or altered CMI, pursuant to section

1202(b)(3).  The Court finds the distribution element satisfied, given defendant's profit of £2.80

(approximately $3.58 as of June 2022) after selling a tumbler on May 3, 2022 that contained an

illustration of plaintiff's Subject Work with removed CMI.  *See* Lapin Decl. ¶ 14 & Ex. D, Dkt.

25-12 at ECF page 3.

Turning to the double-scienter requirement in connection with section 1202(b)(3), this

Court finds defendant acted with the requisite knowledge by removing plaintiff's accurate CMI

and distributing defendant's own CMI with copies of the Infringing Artwork.  Even after

plaintiff submitted takedown notices to Etsy on June 29, 2022 pursuant to the DMCA, defendant

published new listings and distributed additional artwork with defendant's own CMI.  Lapin

Decl. ¶ 18; Pl. Mem. at ECF page 20.  Further, defendant submitted several DMCA counter-

notices to Etsy claiming that the infringing material identified in plaintiff's takedown notice was

"removed or disabled by mistake or because of misidentification of the material."  *See* Compl.

¶ 18.  Even if defendant's initial removal and distribution of plaintiff's CMI were found to be

non-willful, defendant had knowledge that his conduct constituted removal, at least as of July 21,

2022 – the date of service of the Court-approved Temporary Restraining Order ("TRO").  Lapin

Decl. Ex. B, Dkt. 25-10 (email reflecting service on defendant of the TRO served on July 21,

2022).  As such, defendant's continued removal and distribution of plaintiff's CMI, including

after receiving the takedown notices, constitutes knowledge sufficient to satisfy the DMCA's

second scienter requirement.  *See Fischer v. Forrest*, No. 14-CV-1304, 2015 WL 195822, at *7-

*9 (S.D.N.Y. Jan. 13, 2015) (finding that the defendant "brazenly exceeded the scope of

[plaintiff's] authorization when he used the copyrighted materials to sell a competing, knock-off product" and remove plaintiff's CMI even after receiving plaintiff's cease-and-desist letter); *see Trombetta v. Novocin*, No. 18-CV-993, 2021 WL 6052198, at *10 (S.D.N.Y. Dec. 21, 2021), *reconsideration denied*, 2022 WL 280986 (S.D.N.Y. Jan. 31, 2022) ("Notice to a defendant can support an inference that the defendant's violation was knowing and its distribution done with intent to facilitate infringement."). The Court finds that defendant violated section 1202(b)(3).

In sum, this Court concludes that plaintiff's allegations have established defendant's liability under sections 1202(a), 1202(b)(1) and 1202(b)(3).

## IV. Relief

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *3 (E.D.N.Y. Feb. 12, 2020) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

"[T]he law ordinarily forbids a plaintiff from recovering twice for the same injury." *Agence France Presse v. Morel*, No. 10-CV-2730, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) (citing *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995)). However,

courts in the Second Circuit have "awarded damages under multiple intellectual property statutes to the extent that each statute protects different interests." *Olusola v. Don Coqui Holding Co., LLC*, No. 19-CV-6909, 2020 WL 8771246, at *5 (E.D.N.Y. Oct. 8, 2020), *report and recommendation adopted in part,* 2021 WL 631031 (E.D.N.Y. Feb. 18, 2021) (citing *Agence France Presse*, 2014 WL 3963124, at *10) ("[T]he Copyright Act and the DMCA protect different interests."); *see Dermansky v. Tel. Media, LLC*, No. 19-CV-1149, 2020 WL 1233943, at *6 (E.D.N.Y. Mar. 13, 2020) ("[B]ecause the DMCA and Copyright Act have different elements and are intended to deter somewhat different conduct, the Court should undertake a separate damages analysis for each claim.").

The Court finds that dual recovery under the Copyright Act and the DMCA is permissible because plaintiff suffered two distinct types of injuries. *See e.g., Romanowicz v. Alister & Paine, Inc.,* No. 17-CV-8937, 2018 WL 4762980, at *5 n.4 (S.D.N.Y. Aug. 3, 2018) (finding defendant liable and awarding damages under both the Copyright Act and the DMCA because "defendant used plaintiff's image without permission or payment *and* removed plaintiff's watermark and identifying information from the photograph"), *report and recommendation adopted,* 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018).

Here, defendant's removal of plaintiff's CMI, addition of defendant's own false CMI, and distribution of a drinking tumbler "deprived [plaintiff] of professional recognition for the display . . . and . . . made it easier for other potential infringers to compound that injury" in violation of the DMCA. *See Reilly*, 2016 WL 6837895, at *8. Further, "defendant's use of [plaintiff's] copyrighted [Subject Works] without [his] permission deprived [plaintiff] of the ability to control when and where it would be displayed, as well as the licensing fee []he would ordinarily charge for such display," and caused plaintiff a compensable injury under the

Copyright Act.  *See id.*  Therefore, because plaintiff has demonstrated two distinct injuries, the Court finds that plaintiff may recover damages under both statutes.

### A.    Statutory Damages under the Copyright Act

Under the Copyright Act, a prevailing plaintiff may choose "to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work" of between $750 and $30,000, as the court considers just.  *See* 17 U.S.C. § 504(c)(1).  "[W]here the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2). Willfulness may be inferred where, as here, defendant has defaulted.  *See, e.g.*, *Farrington v. Sell It Soc., LLC*, No. 18-CV-11696, 2020 WL 7629453, at *1 (S.D.N.Y. Dec. 21, 2020) (citing *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12-CV-5354, 2017 WL 10088143, at *5 (E.D.N.Y. Mar. 21, 2017)) ("[C]opyright infringement may be deemed willful by virtue of a defendant's default, without a further showing by the plaintiff.").

Trial courts have "wide discretion" under the Copyright Act in setting the statutory damages award.  *See Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986).  Courts in the Second Circuit consider the following factors when determining the appropriate amount of statutory damages:

> [i] the expenses saved and the profits reaped by the infringer, [ii] revenues lost by the plaintiffs, [iii] the value of the copyright, [iv] the deterrent effect of the award on others besides the defendant, [v] whether the defendant's conduct was innocent or willful, [vi] whether defendant has cooperated in providing particular records from which to assess the value of the infringing material produced, and [vii] the potential for discouraging the defendant.

*Noble v. Crazetees.com*, No. 13-CV-5086, 2015 WL 5697780, at *6 (S.D.N.Y. Sept. 28, 2015). In addition, "allowance must be made for the fact that the defendant's failure to appear limits

that which plaintiff can show." *Seelie v. Original Media Grp. LLC,* No. 19-CV-5643, 2020 WL 136659, at *2 (E.D.N.Y. Jan. 13, 2020) (citing *Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2019 WL 6733022, at *17 (E.D.N.Y. Oct. 1, 2019)).

"Statutory damages need not be directly correlated to actual damages, but they ought to bear some relation to actual damages suffered." *Parsons v. Bong Mines Ent. LLC*, No. 19-CV-813, 2021 WL 931506, at *9 (E.D.N.Y. Feb. 18, 2021) (quoting *Mantel v. Smash.com Inc.*, No. 19-CV-6113, 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019)), *report and recommendation adopted*, 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021).  It is common practice for courts to base their statutory damage assessments on "the [copyright] owner's loss of the fair market value of the license fees he might have exacted of the defendant." *McGlynn v. Cube New York Inc.*, No. 20-CV-4546, 2021 WL 1338955, at *3 (S.D.N.Y. Apr. 9, 2021) (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)); *see Prepared Food Photos, Inc. v. Trip Rest. LLC*, No. 22-CV-7953, 2023 WL 2955298, at *4 (S.D.N.Y. Apr. 14, 2023).  "To determine the number of violations, therefore, the court need only sum the number of separate, individual works which were the subject of a defendant's infringing activities." *Antenna Television v. Aegean Video Inc.*, No. 95-CV-2328, 1996 WL 298252, at *11 (E.D.N.Y. Apr. 23, 1996).

Further, when the willfulness of infringing defendants is sufficiently shown by plaintiffs in copyright infringement cases, "trebling the licensing fee . . . is in line with the general approach taken by courts" in calculating statutory damages. *Erickson Prods., Inc. v. Only Websites, Inc.*, No. 12-CV-1693, 2016 WL 1337277, at *3 (S.D.N.Y. Mar. 31, 2016) (finding that "damage awards amounting to three times the plaintiff's licensing fee are adequate both to deter the defendant from violating copyright law in the future, and to serve as a general deterrent to other potential infringers"); *see also Nat'l Photo Grp., LLC v. Bigstar Entm't, Inc.*, No. 13-

CV-5467, 2014 WL 1396543, at *3-*4 (S.D.N.Y. Apr. 11, 2014) (concluding that awarding statutory damages of "three times the photograph's licensing fee" for willful copyright infringement would have the "desired deterrent effect on both [defendant] and other potential infringers"), *report and recommendation adopted*, 2014 WL 5051275 (S.D.N.Y. Oct. 8, 2014).

Here, plaintiff seeks to recover $135,000 in statutory damages, consisting of $15,000 in damages for each of the nine works infringed upon (three times the $5,000 lost licensing fee per work). *See* Pl. Mem. at ECF page 16. In support of this request, plaintiff provides a licensing agreement demonstrating that he, by and through his company, J.Q. Licensing, LLC, has previously licensed photographs of the Subject Works for an annual minimum fee of $5,000. *See* Wright Decl. Ex. E, License Agreement, Dkt. 30 at ECF page 2 (refiling Dkt. 25-7). Therefore, the Court uses $5,000 as the licensing fee benchmark for determining the total statutory damages award, as is supported by the sample licensing agreement submitted.

Next, plaintiff asks the Court to apply a multiplier of three to his licensing fee benchmark for the Subject Works, which would yield a total award of $135,000. *See* Pl. Mem. at ECF page 16. First, plaintiff sufficiently demonstrates that defendant's infringing actions were willful. Even after receiving several DMCA takedown notices from Etsy, plaintiff's evidence shows that defendant "either published new listings despite having been put on notice . . . or otherwise allowed Infringing Artwork to remain available for sale, despite the same notice." *See id.* at ECF page 13; Compl. ¶ 22; Lapin Decl. ¶¶ 18-20, Dkt. 25-8. Moreover, instead of taking down the infringing work, defendant submitted DMCA counter-notices to Etsy. *See* Compl. ¶ 18. According to plaintiff, "it is in the interest of sellers like Defendant to submit counter-notices. Otherwise, their accounts with Etsy may be suspended/terminated and any funds held by Etsy, may not be recoverable." Wright Decl. ¶ 32. Defendant's refusal to participate in this litigation

further demonstrates the willfulness of his infringement.  *See Prepared Food Photos*, 2023 WL 2955298, at *4.  Therefore, this Court recommends awarding plaintiff three times the $5,000 licensing fee per work, for a total of **$135,000** (($5,000 x 9) x 3).

### B.    Statutory Damages under the DMCA

Under the DMCA, an award of statutory damages is "especially fitting in the default judgment context where [p]laintiffs are without the benefit of any disclosure by the infringer, leaving damages uncertain."  *Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822, 2009 WL 2905780, at *2 (E.D.N.Y. Sept. 10, 2009) (citing *Sara Lee Corp. v. Bags of N.Y., Inc.,* 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999)).  Plaintiffs may recover an award of statutory damages, in the range of $2,500 to $25,000, "for each violation of section 1202."  17 U.S.C. § 1203(c)(3)(B).  In "determining where within the range of $2,500 and $25,000 to award statutory damages, courts 'consider [several] factors, namely, the difficulty of proving actual damages, the circumstances of the violation, whether Defendants violated the DMCA intentionally or innocently, and deterrence.'"  *Sheldon*, 2016 WL 5107072, at *16 (citing *Agence France Presse*, 2014 WL 3963124, at *10).

Here, plaintiff seeks $10,000 per violation occurring *prior to* the June 29, 2022 DMCA takedown notices, totaling $260,000 (for 26 alleged violations); and $25,000 per violation occurring *after* the June 29, 2022 takedown notices, totaling $150,000 (for 6 alleged violations); for a total award of $410,000 in statutory damages under the DMCA.  *See* Pl. Mem. at ECF page 23.[12]

---

[12] Under section 1202(b), each act of removal and each distribution may constitute a separate violation of the DMCA.  *See Agence France Presse*, 2014 WL 3963124, at *7 (upholding a jury verdict that defendant committed two DMCA violations -- "providing or distributing" and "altering" [*i.e.*, removing or altering] CMI -- with respect to each of the eight photographs at issue, for a total of 16 violations); *Sheldon*, 2016 WL 5107072, at *15 (holding plaintiff could

First, with respect to the purported total number of violations, the Court is constrained to note that plaintiff's request for damages is duplicative. Plaintiff states that his request for damages for 18 acts of "alteration," one act of distribution of false CMI, one act of distribution of works with false CMI,[13] and six separate acts of removal (for a total of 26 acts) "*include*s the acts occurring *after* the June 29, 2022 DMCA Takedown Notification, consisting of 3 acts of removal and 3 acts of alteration." *See* Pl. Mem. at ECF page 22 (emphasis added). Plaintiff requests $260,000 for these 26 violations ($10,000 per violation). *See id.* at ECF page 23. However, plaintiff requests an additional $150,000 for the six violations ($25,000 per violation) that occurred *after* June 29, 2022. *Id.* It appears that plaintiff miscalculated the number of violations surrounding the June 29, 2022 takedown notices, which caused plaintiff to seek duplicative damages for those violations that occurred *after* June 29, 2022. Therefore, the Court calculates damages based on the initial premise that defendant committed a total of 26 acts in violation of the DMCA.

In analyzing the relevant factors, this Court recommends awarding $10,000 per DMCA violation. Defendant maintained infringing listings for sale on his Etsy store after plaintiff submitted takedown notices, and defendant submitted his own counter-notices to Etsy. Lapin Decl. ¶¶ 15-20. This Court further recognizes that defendant has refused to participate in this

---

recover statutory damages for 20 DMCA violations after defendant removed plaintiff's CMI, displayed 11 reproductions of the photograph at issue, and added a logo or watermark to nine of the photographs). The Court notes there is often uncertainty surrounding what conduct constitutes a single violation. *See Sheldon*, 2016 WL 5107072, at *15.

[13] Plaintiff argues that defendant "distributed false CMI and works containing false CMI" in violation of section 1202(b)(2) and (3). Pl. Mem., Dkt. 25-1 at ECF page 22. Plaintiff's reference to "false CMI" instead of "removed or altered" CMI in the context of section 1202(b) is misleading because section 1202(a) prohibits the use of "false CMI," not section 1202(b). The Court assumes that the reference to "false CMI," instead refers to "removed or altered" CMI.

litigation, failing to raise any objection or defenses and failing to respond to plaintiff's counsel after being put on notice of the claims against him.  *See* Dkt. 25-10 (emails to defendant attaching the TRO, Complaint, Order extending the TRO).

"While a plaintiff is allowed to opt for statutory damages in lieu of actual damages, this option is not intended to provide the plaintiff with a windfall recovery." *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 769 (S.D.N.Y. 1988); *see Miller v. Netventure24 LLC*, No. 19-CV-7172, 2021 WL 3934262, at *8 (S.D.N.Y. Aug. 6, 2021), *report and recommendation adopted,* 2021 WL 3931928 (S.D.N.Y. Sept. 2, 2021).  In fact, courts generally award statutory damages on the lower end of the damages spectrum.  *See Ward v. Compound Ent. LLC*, No. 18-CV-7268, 2020 WL 4496763, at *3 (S.D.N.Y. Aug. 3, 2020) (finding plaintiff should be awarded only $2,500 under the DMCA because plaintiff provided no evidence that the photograph would have greater market value); *Simhaq v. Kid Carter Touring, Inc.*, No. 20-CV-2057, 2021 WL 3810754, at *6 (E.D.N.Y. Aug. 11, 2021), *report and recommendation adopted,* 2021 WL 3793876 (E.D.N.Y. Aug. 26, 2021) (finding an award of $5,000 appropriate when the defendant committed just one act of infringement but removed the painting when confronted by plaintiff); *Dermansky*, 2020 WL 1233943, at *6 (finding a $5,000 award appropriate given the single act of infringement, that plaintiff took no steps to cure the violation, and that plaintiff provided no evidence of actual harm).

Here, this Court notes that Etsy immediately removed the infringing listings on June 29, 2022 (Dkt. 1-3), limiting the extent of harm suffered by plaintiff.  In light of the foregoing, this Court recommends an award of $10,000 per violation for violations that occurred both before and after the June 29, 2022 takedown notification.  This amount appropriately accounts for

defendant's willful conduct and deters future infringement by this defendant and other online sellers.

With respect to the number of DMCA violations, this Court finds there are three types of acts for which statutory damages may be awarded. First, as stated previously, the Court finds that plaintiff has set forth sufficient evidence to hold defendant liable for six separate acts of "alteration or removal" in violation of section 1202(b)(1). Pl. Mem. at ECF page 22 ("six separate acts of removal"); Wright Decl. ¶¶ 33, 34. The Court recommends awarding $10,000 per act of removal, irrespective of the date, which results in a total award of **$60,000** ($10,000 x 6) for violations of section 1202(b)(1).

Second, the Court addresses plaintiff's request for damages based on defendant's 18 acts of providing false CMI (referred to by plaintiff as "acts of alteration"). Specifically, plaintiff alleges that defendant "affixed his own logos onto the Infringing Artwork [and] ascribed his own terms and conditions to each listing containing the Infringing Artwork." *See* Pl. Mem. at ECF page 22. "The addition of a watermark falls under the definition of CMI and the act of placing watermarks on copyrighted works can constitute an act of concealing copyright infringement." *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 138 (E.D.N.Y. 2019). Here, plaintiff provides screen captures of 18 unique drinking tumblers posted to Etsy under defendant's user account, with each tumbler containing at least one of plaintiff's wildlife illustrations. *See* Dkt. 4-4 (18 screenshots of infringing listings); Compl. Exs. D and E, Dkts. 1-5, 1-6. Each listing also contains defendant's own "RiskirStreet" logo and "Terms and Conditions." *Id.; see also* Lapin Decl. ¶ 22, Dkt. 25-8 & Ex. E, Dkt. 25-13 (two exemplar listings with defendant's "terms of use" of the infringing digital files). Accordingly, the Court finds that the 18 listings at issue contain false CMI. Thus, there is sufficient evidence that

defendant committed 18 separate acts of providing false CMI, which warrants an award of $10,000 each, totaling **$180,000** ($10,000 x 18).

Finally, this Court turns to plaintiff's claim that "the single sale of one of the Infringing Artworks" constitutes two statutory violations -- one act of "distribution of false CMI" and one act of "distribution of a work with false CMI." *See* Pl. Mem. at ECF page 22 n.3. However, plaintiff cites no caselaw to support his premise that this one sale can constitute violations of both section 1202(b)(2) and section 1202(b)(3), simultaneously. Further, as noted above, given the allegations here, the Court construes any claim under 1202(b)(2) for distribution of false CMI as duplicative of a claim under 1202(b)(3) for distribution of a work with false CMI. *See supra*, § III(B). Therefore, this Court recommends awarding damages for just one act of distribution of an infringing work with false or altered CMI in violation of section 1202(b)(3). *See Stevens*, 899 F.3d at 673 n.3 (denying plaintiff recovery under both sections 1202(b)(2) and 1202(b)(3)); *Reilly*, 2016 WL 6837895, at *10 (endorsing one award for the distribution of the altered photograph in violation of subsection 1202(b)(2) *or* 1202(b)(3)) (citing *McClatchey v. Associated Press*, No. 3:05-CV-145, 2007 WL 1630261, at *5-*6 (W.D. Pa. June 4, 2007)). Thus, the Court finds an award of **$10,000** ($10,000 x 1) for the distribution violation appropriate.

In total, the Court recommends awarding plaintiff **$250,000** ($10,000 x 25) in statutory damages to compensate plaintiff for defendant's 25 violations of the DMCA.

### C.     Attorney's Fees and Costs

Plaintiff seeks to recover $8,550 in attorney's fees and $402 in costs, pursuant to 17 U.S.C. § 505 of the Copyright Act. *See* Pl. Mem. at ECF page 16. Under both the Copyright Act and the DMCA, a court may "in its discretion" award a reasonable attorney's fee to the

prevailing party. *See* 17 U.S.C. §§ 505, 1203(b)(5). "When determining whether to award attorney[']s fees [in copyright cases], district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Hirsch v. F. Daily Inc.*, No. 18-CV-6531, 2021 WL 1158562, at *8 (E.D.N.Y. Feb. 9, 2021) (alterations in original, citing *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010)), *report and recommendation adopted*, 2021 WL 1163153 (E.D.N.Y. Mar. 26, 2021). Here, the Court finds an award of attorney's fees warranted given defendant's willful conduct and default.

The Court turns to the reasonableness of plaintiff's fee application. District courts have wide discretion when determining the reasonableness of attorney's fees. *See Phillips*, 2023 WL 1987206, at *11; *Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). "The starting point of the attorney's fee calculation is the 'lodestar' method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668-69 (S.D.N.Y. 2001); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Millea v. Metro North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar method "is essentially what a reasonable, paying client would be willing to pay, given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Streamlight, Inc.*, 2019 WL 6733022, at *18 (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).

In addition, "[i]t is well settled law that in copyright infringement cases, the courts evaluate the amount of work and skill involved and the result achieved to determine attorney's fees." *Agee v. Paramount Commc'ns, Inc.*, 869 F. Supp. 209, 212-13 (S.D.N.Y. 1994), *as amended* (July 27, 1995). Finally, "[t]he 'most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Olusola*, 2021 WL 631031, at *6 (citing *Barfield v. New York City Health & Hosps. Corp.,* 537 F.3d 132, 152 (2d Cir. 2008)).

## 1.    Reasonable Hourly Rate

First, plaintiff's counsel, Dmitry Lapin, seeks an award of fees at the hourly rate of $300. This Court finds Mr. Lapin's hourly rate of $300 reasonable. *See Phillips*, 2023 WL 1987206, at *10 (finding reasonable attorney's requested hourly rate of $300 for copyright infringement dispute); *Streamlight, Inc.,* 2019 WL 6733022, at *19 (awarding attorneys' fees from $450 per hour for partners to $200 per hour for associates). Plaintiff's attorney is "Senior Litigation Counsel with Axenfeld Law Group, LLC." Lapin Decl. ¶ 25. As of October 3, 2022, Mr. Lapin had been practicing law for more than eight years, and charges a standard rate for legal services of $300 per hour. *Id.* ¶¶ 24-25. He has "developed expertise and in-depth knowledge of copyright law and litigation practice, including issues relating to the DMCA." *Id.* ¶ 25. Mr. Lapin's requested hourly rate is well within the range of hourly rates for comparable copyright attorneys for which fees have been awarded in this District.

## 2.    Hours Spent on the Case

Next, the Court finds reasonable the 28.5 hours Mr. Lapin spent on this litigation based on the submitted time records. *See* Lapin Decl. Ex. F, Attorney Time Records, Dkt. 25-14; *see Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 201 (S.D.N.Y. 2016) (finding that

plaintiff's counsel submitted an invoice setting forth the date services were performed, hours spent, and nature of the work performed by the attorney, a submission that meets the evidentiary threshold necessary to be awarded attorney's fees).  Approximately 16.1 of Mr. Lapin's hours were spent preparing the Complaint, drafting the motion for temporary restraining order, preparing for the injunction hearing, and counseling plaintiff.[14]  Approximately 12.4 hours were spent drafting and revising plaintiff's motion for default judgment.  The Court finds the hours spent on litigating this case to a default judgment reasonable.  *See Phillips*, 2023 WL 1987206, at *10 (finding that nine hours spent on a case resolved through default judgment, without a TRO, is appropriate); *Sheldon v. Plot Com*., No. 15-CV-5885, 2017 WL 2168654, at *4 (E.D.N.Y. Apr. 18, 2017), *report and recommendation adopte*d, 2017 WL 2168078 (E.D.N.Y. May 16, 2017) (finding an attorney's request for 25.1 hours of work spent on a Copyright Act and DMCA case reasonable).  Therefore, this Court recommends awarding plaintiff **$8,550** in attorney's fees for 28.5 hours of work.

### 3.    Costs

Finally, plaintiff requests $402 in costs for the court filing fee.  *See* Pl. Mem. at ECF page 16.  Like attorney's fees, under the Copyright Act and the DMCA, the court has discretion to award costs to the prevailing party.  *See Phillips*, 2023 WL 1987206, at *11 (citing 17 U.S.C. § 1203(b)(4)); *Alvarado v. VNY Media Corp.*, No. 21-CV-4565, 2022 WL 2834655, at *5 (E.D.N.Y. July 20, 2022) (citing 17 U.S.C. § 505).  Specifically, "filing fees are recoverable without supporting documentation if verified by the docket."  *Martinka v. Yeshiva World News, LLC*, No. 20-CV-5330, 2022 WL 4484655, at *8 (E.D.N.Y. Sept. 27, 2022).  Here, the docket

---

[14] Plaintiff's counsel properly excluded time spent on the motion for contempt against non-party Etsy, Inc.  *See* Lapin Decl. ¶ 23 n.3.

reflects that plaintiff paid the $402 filing fee on July 14, 2022.  The Court, therefore, recommends awarding plaintiff costs of **$402**.

**Conclusion**

For the reasons set forth above, this Court respectfully recommends:  (1) granting plaintiff's motion for a default judgment against defendant and entering judgment against the defaulting defendant for willful copyright infringement under the Copyright Act and willful violations of the DMCA; (2) awarding plaintiff damages of **$385,000**, consisting of **$135,000** in statutory damages under 17 U.S.C. § 504(c)(1) of the Copyright Act, and **$250,000** in statutory damages under section 1203(c) of the DMCA; and (3) awarding plaintiff **$8,550** in attorney's fees and **$402** in costs, for a total award of **$393,952**.

Pursuant to the Court's prior ruling on plaintiff's Motion for Contempt Against Third Party Etsy, Inc. entered on September 13, 2022, Etsy is ordered to pay plaintiff a sum of **$447.96**.

A copy of this Report and Recommendation is being electronically served on counsel. The Clerk's Office is directed to email a copy of this Report and Recommendation to the following email addresses for defendant:  lilahbren3286294@gmail.com, teodoraverlindenvuq79@gmail.com, and forestanderson905685@gmail.com.

Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendant at his last known address and e-mail addresses, and to file proof of service on ECF by **September 12, 2023**.  Any objections to the recommendations made in this Report must be filed with the Honorable Carol Bagley Amon within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 21, 2023**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892

F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
September 7, 2023

s/ James R. Cho
James R. Cho
United States Magistrate Judge